IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MT. MCKINLEY INSURANCE COMPANY, formerly known as Gibraltar Casualty Company, a corporation; and EVEREST REINSURANCE COMPANY, formerly known as Prudential Reinsurance Company, a corporation,

      Plaintiffs,

  v.

SWISS REINSURANCE AMERICA CORPORATION, a corporation, as successor in interest to the policies issued by The Manhattan Fire & Marine Insurance Company,

      Defendant.
_____/

No. C 09-03857 CW

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Docket Nos. 48 and 56)

    Plaintiffs Mt. McKinley Insurance Company and Everest Reinsurance Company assert a claim for equitable contribution against Defendant Swiss Reinsurance America Corporation. Plaintiffs move for summary judgment. Defendant opposes Plaintiffs' motion and cross-moves for summary judgment. Plaintiffs oppose Defendant's cross-motion. The motions were taken under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS Plaintiffs' motion and DENIES Defendant's cross-motion.

BACKGROUND

    The parties are insurance companies with a common insured, The Herrick Corporation. Plaintiffs claim they are entitled to contribution from Defendant based on its failure to pay its share

of a settlement between Herrick and Terry and Karen Strachan.

This action concerns only a legal question regarding Defendant's insurance policies. The parties stipulate to the facts and evidence described below.

I.   Herrick's Settlement of the Strachan Lawsuit

On August 1, 2007, the Strachans sued Herrick, alleging that Terry Strachan suffered bodily injuries resulting from exposure to asbestos. In January, 2008, Herrick notified its insurers of the lawsuit, including Plaintiffs and Defendant. The period of injury alleged in the Strachans' suit implicated ten of Herrick's extant insurance policies.[1] As explained further below, these policies were issued by Plaintiffs, Defendant, Fireman's Fund Insurance Company, Aetna Insurance Company and Industrial Underwriters Insurance Company.

On March 5, 2008, Herrick and the Strachans executed a settlement agreement, under which Herrick promised to pay $1,950,000 to the Strachans. On March 7, 2008, Herrick paid $1,000,000 of the settlement amount, of which $700,000 was funded by Plaintiffs and $300,000 was funded by Fireman's Fund. On April 15, 2008, Herrick paid the remaining $950,000, which was entirely funded by Plaintiffs. On June 8, 2008, Aetna and Industrial Underwriters reimbursed Plaintiffs a total of $500,000. Thus, Plaintiffs' net contribution to the settlement was $1,150,000. Defendant did not cover any portion of the Strachan settlement.

---

[1] Two additional insurance policies were in effect during the period of the alleged injury. However, Plaintiffs represent, and Defendant does not dispute, that the carriers that issued those policies became insolvent and claims cannot be made against them.

II. Herrick's Insurance Policies

Defendant, or its predecessors-in-interest, issued two of Herrick's ten insurance policies described above. Both policies stated that they provided "EXCESS GENERAL LIABILITY" coverage. Jt. Exs., Ex. A at 1 and Ex. B at 1. The two policies were effective for consecutive one-year terms between October 1, 1978 and October 1, 1980. Both policies contained an endorsement entitled "RETAINED LIMIT - COMPANY(S) LIMIT OF LIABILITY." Jt. Exs., Ex. A at 21 and Ex. B at 20. The endorsement provided that its text superseded any provision concerning limits of liability that appeared elsewhere in the policy. In relevant part, the endorsement stated,

> WITH RESPECT TO BODILY INJURY, OR PROPERTY DAMAGE, OR PERSONAL INJURY OR ANY COMBINATION THEREOF, THE COMPANY(S) LIABILITY SHALL BE ONLY FOR THE ULTIMATE NET LOSS IN EXCESS OF THE INSURED'S RETAINED LIMIT AS SPECIFIED IN ITEM 8(a) OF THE LIMITS OF LIABILITY SECTION OF THE SCHEDULE AS THE RESULT OF ANY ONE OCCURRENCE . . .

Id., Ex. A at 21 and Ex. B at 20. Line 8(a) listed $250,000 as Herrick's retained limit.

The policies' schedules provided that Defendant's liability under each policy was limited to $1 million. The schedules also listed "SELF INSURED RETENTION" under the field entitled "Primary Insurer(s)." Jt. Exs., Ex. A at 28 and Ex. B at 26. No primary insurers other than Herrick's self-insured retention were listed.

Finally, Defendant's policies contained the following provision:

> Other Insurance
> The insurance afforded by this policy is primary insurance, except when stated to apply in excess of . . . other insurance. . . .
>
> When both this insurance and other insurance apply to the

3

>     loss on the same basis . . . the company shall not be
>     liable under this policy for a greater proportion of the
>     loss than that stated in the applicable contribution
>     provision below:
>
>     (a) Contribution by Equal Shares.  If all of such
>         other valid and collectible insurance provides
>         for contribution by equal shares, the company
>         shall not be liable for a greater proportion of
>         such loss than would be payable if each insurer
>         contributes an equal share until the share of
>         each insurer equals the lowest applicable limit
>         of liability under any one policy or the full
>         amount of the loss is paid, and with respect to
>         any amount of loss not so paid the remaining
>         insurers then continue to contribute equal
>         shares of the remaining amount of the loss
>         until each such insurer has paid its limit in
>         full or the full amount of the loss is paid.
>
>     . . .

Jt. Exs., Ex. A at 31 and Ex. B at 6.

The terms and conditions of Herrick's remaining eight policies are not in dispute and will not be recited here.  In sum, Fireman's Fund issued three policies, each of which was for $100,000 per person.  Two of the policies were effective for consecutive one-year terms, which spanned from April 1, 1969 to April 1, 1971; the last policy was effective from April 1, 1971 to June 15, 1971. Aetna issued one policy for $300,000 per occurrence, which was effective from July 1, 1975 to July 1, 1976.  Finally, Plaintiffs issued four policies, each of which was for $500,000 with a $50,000 deductible per occurrence.  Plaintiffs' four policies were effective for consecutive one-year terms between October 1, 1980 and October 1, 1984.  Similar to Defendant's, each of these policies contained an "other insurance" clause, which provided that any loss by Herrick would be allocated among its insurance policies based on "Contribution by Equal Shares."

4

For this action, the parties "stipulate and agree that their rights and obligations with respect to the Strachan Action, if any, are not impacted by any other claim, i.e., that the 'limits of liability,' applicable aggregate limits, if any, 'self-insured retentions,' and/or 'retained limits,' set forth in their respective policies have not been impaired and/or exhausted by payment of any other claim." Jt. Stip. of Facts ¶ 16.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

## DISCUSSION

Generally, "there are two levels of insurance coverage, primary and excess." Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co., 72 Cal. App. 4th 1063, 1076 (1999). Liability on the part of primary insurers "attaches immediately upon the happening of the occurrence that gives rise to liability." Id. (citation and internal quotation marks omitted). In contrast, under California's rule of horizontal exhaustion, excess insurers become liable only after all primary insurance has been exhausted. N. Am. Capacity Ins. Co. v. Claremont Liab. Ins. Co., 177 Cal. App. 4th 272, 293 (2009).

The doctrine of equitable contribution grants an insurer that

5

has paid a claim the right to recover from a co-insurer, where both insurers were obliged to indemnify or defend the claim, and where the co-insurer did not share, or did not sufficiently share, in covering the claim. See Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th 1279, 1293 (1998). "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." Id.

In adjudicating equitable contribution claims, courts must look first to the language of the insurance policies to determine whether the non-participating co-insurer had a legal obligation to provide coverage. Safeco Ins. Co. of Am. v. Superior Court, 140 Cal. App. 4th 874, 879 (2006). Unless there is an agreement to the contrary, there is no contribution "between a primary and an excess carrier." Reliance Nat'l Indem. Co., 72 Cal. App. 4th at 1078 (citation omitted).

Relying primarily on the fact that its policies stated that they afforded "excess general liability" coverage, Defendant argues that it was an excess insurer. Thus, Defendant maintains, it does not owe any contribution to Plaintiffs, which it asserts were Herrick's primary carriers, along with Fireman's Fund, Aetna and Industrial Underwriters.

The "excess general liability" label on the policies did not make Defendant an excess insurer shielded from Plaintiffs' equitable contribution action. This label, on its own, did not explain of what insurance Defendant's policies were to be considered "excess." The policies' terms, however, demonstrate

6

that the policies provided coverage in excess of Herrick's self-insured retention (SIR). An SIR, which is also referred to as a "retained limit," pertains to "a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied before there is any coverage under the policy." Forecast Homes, Inc. v. Steadfast Ins. Co., 181 Cal. App. 4th 1466, 1474 (2010) (citation omitted). The policies unambiguously state that Defendant was liable for any ultimate net loss in excess of $250,000, Herrick's SIR, up to a maximum of $1 million. Further, the policies state that they afford "primary insurance, except when stated to apply in excess of . . . other insurance."[2] Aside from Herrick's SIR, no other insurance is named in the policies, and there is no evidence that Herrick carried any other primary insurance during the period that Defendant's policies were in effect.

Defendant cites Pacific Employers Insurance Company v. Domino's Pizza, Inc., 144 F.3d 1270 (9th Cir. 1998), to support its

---

[2] Defendant asserts that this contract language must be ignored because "'other insurance' clauses have no applicability in disputes between excess and primary insurers." Def.'s Surreply at 7. However, Defendant takes this legal principle out of context. Generally, "other insurance" clauses limit an "insurer's liability to the extent that other insurance covers the same risk." Travelers Cas. & Sur. Co. v. Am. Equity Ins. Co., 93 Cal. App. 4th 1142, 1149 (2001) (citation omitted). They often contain substantive provisions that "attempt to control the manner in which each insurer contributes to or shares a covered loss." Id. Thus, this language is inapplicable in disputes between primary and excess insurers because, by definition, they do not share liability for a covered loss. Id. This principle, however, does not require courts to read all language in these clauses out of an insurance contract. See Croskey, et al., California Practice Guide: Insurance Litigation ¶ 8:190 (2010) ("Whether a policy provides primary or secondary coverage is determined by its provisions, including any 'other insurance' clause.").

7

argument that it was an excess insurer and, therefore, Plaintiffs cannot seek contribution from it. There, the Ninth Circuit stated that "self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." Id. at 1277 (citing Gen. Star Indem. Co. v. Superior Court, 47 Cal. App. 4th 1586 (1996)). Pacific Employers did not hold, as Defendant suggests, that insurance policies subject to SIRs must be considered excess policies in relation to those of co-insurers. Indeed, California courts have cautioned against a broad reading of Pacific Employers, stating, "The analogy between 'primary' and 'excess' insurance should not be carried too far. An SIR is not the same as primary insurance for all purposes." Forecast Homes, 181 Cal. App. 4th at 1474 (citation and internal quotation marks omitted; emphasis in original). Defendant's policies were in excess only of Herrick's SIR. In other words, Herrick had to have exhausted its SIR before Defendant became obliged to pay a dollar. Defendant points to no language in its policies to show that they were in excess of Plaintiffs' policies, which had not yet even been issued. Defendant was not an excess insurer relative to Plaintiffs. Thus, Plaintiffs are not precluded from seeking contribution from Defendant.

Defendant also relies on Transcontinental Insurance Co. v. Insurance Co. of the State of Pennsylvania, 148 Cal. App. 4th 1296 (2007), which is inapplicable. That case did not involve insurance policies subject to SIRs and their relationship to policies without

8

retained limits. Instead, it concerned an insurer's policies which explicitly stated that they were in excess of a policy issued by another carrier. See id. at 1301. The court concluded that the excess insurer "bargained for a different kind of liability" because, under its policy, it "agreed to pay only when the various underlying insurance became exhausted." Id. Here, no such agreement existed. Defendant bargained for liability that accrued if Herrick met its $250,000 SIR. It did not, as it now asserts, bargain for liability conditioned on the exhaustion of Herrick's policies issued by other carriers.

Defendant also maintains that Herrick's SIR has not been met and, therefore, it is not obliged under its policies to fund any part of the Strachan settlement. That Herrick did not satisfy its SIR with its own funds is irrelevant. There is no requirement, absent a contrary contractual provision, that an insured pay an SIR amount out of its own pocket. See Vons Cos., Inc. v. U.S. Fire Ins. Co., 78 Cal. App. 4th 52, 59-63 (2000); Forecast Homes, 181 Cal. App. 4th at 1474. Payments by other insurers may satisfy an SIR. Forecast Homes, 181 Cal. App. 4th at 1474-75. And, as explained below, Plaintiffs seek to recover from Defendant only an amount that takes into account Herrick's SIR.

Although Defendant can be held liable for equitable contribution, Plaintiffs may recover only if they prove that they paid more than their fair share and proffer "the evidence necessary to calculate such 'fair share.'" Scottsdale Ins. Co. v. Century Sur. Co., 182 Cal. App. 4th 1023, 1028 (2010).

Plaintiffs provide evidence, to which Defendant stipulated,

9

that their net contribution was $1,150,000. Plaintiffs also offer calculations, supported by evidence, showing that this amount exceeded their fair share of the $1,950,000 Strachan settlement. Plaintiffs' calculations rely on an equal share method of allocation, which is the approach described in all of the insurers' policies. Because the insurers agreed to this method of allocation and its application would not be inequitable, the Court adopts it. See Scottsdale, 182 Cal. App. 4th at 1037 ("In the usual case in which the trial court is asked to choose a method of allocation, the insurers on the risk have not already agreed among themselves on the method of allocation.").

Plaintiffs demonstrate their entitlement to equal contribution as follows. First, to account for the SIR in Defendant's policies, they allocate the first $250,000 of the settlement amount among their policies and those of Aetna and Industrial Underwriters.[3] Then, they allocate the remaining $1.7 million among their policies and those of Defendant, Fireman's Fund, Aetna and Industrial Underwriters. Finally, Plaintiffs add their share of the SIR to their share of the remaining settlement amount.

Plaintiffs' calculations, with which the Court agrees, show that Defendant's obligation on Herrick's loss was $350,000. They also show that, had Defendant contributed this amount, Plaintiffs' fair share would have been approximately $866,666. The difference

---

[3] Plaintiffs assert that, in their calculations, they did not allocate Fireman's Fund settlement contribution of $300,000 toward payment of the SIR. Instead, Plaintiffs allocated all of Fireman's Fund settlement contribution to the $1.7 million remaining after payment of the SIR. This allocation results in a lower overall contribution by Defendant.

10

between this amount and Plaintiffs' actual net contribution of $1,150,000 million is $283,334, which reflects the overpayment Plaintiffs seek to recover from Defendant.

Defendant does not dispute that Herrick's ten insurance policies required "Contribution by Equal Shares." Nor does Defendant contest that, under this method, Plaintiffs' calculations are accurate. Instead, Defendant makes several other arguments, none of which are persuasive.

First, Defendant argues that Plaintiffs' share was not disproportionate in light of its obligations and in relation to the other participating insurers' contributions. It notes that Plaintiffs funded approximately fifty-nine percent of the settlement, and that Plaintiffs' policies provided sixty-five percent of Herrick's total insurance and forty-four percent of the overall period of coverage. These statistics are not relevant to this case. Plaintiffs do not complain that their share was disproportionate relative to the other participating insurers; instead, they assert that they paid more than their fair share because Defendant defaulted on its obligations.

Defendant, citing Scottsdale, then complains that Plaintiffs' proposal improperly redistributes Herrick's loss, contrary to the participating insurers' agreement on allocation. However, Defendant misapprehends the teachings of Scottsdale. There, Scottsdale and three other insurers agreed to share equally the costs of defending their common insured and to allocate indemnity costs based on a "time on risk" method. 182 Cal. App. 4th at 1029. Thereafter, Scottsdale brought an equitable contribution claim

11

1 against Century, a non-participating insurer, and proposed that
2 Century reimburse half of the amount it paid. Id. at 1033. This
3 proposal, which did not have any apparent basis in any agreement
4 among any of the insurers, was adopted by the trial court. The
5 state appellate court found this result inequitable. Id. at 1037-
6 38. It reasoned that, had Century participated in the agreement to
7 share defense costs equally, each insurer would have borne twenty
8 percent of the defense costs. Id. at 1037. Under the trial
9 court's scheme, however, Scottsdale and Century each would have
10 been liable for only 12.5 percent of the defense costs. Id. The
11 appellate court stated that "Scottsdale should be bound by its"
12 agreement to share defense costs equally and should not be allowed
13 to pay less than its fair share under its allocation agreement with
14 the other participating insurers. Id.

15 Here, Defendant acknowledges that Plaintiffs and the
16 participating insurers apparently agreed to share settlement costs
17 on an equal shares basis. See Def.'s Mem. of P & A at 14. The
18 amount that Plaintiffs seek from Defendant is based on the same
19 method. Unlike in Scottsdale, Plaintiffs' recovery will not result
20 in their net payment being less than what they would have paid had
21 Defendant contributed its share under the agreed-upon equal shares
22 method.

23 Finally, Defendant appears to complain that, if Plaintiffs
24 prevail, their net contribution to the settlement would be less
25 than what they actually paid under the participating insurers'
26 agreement. But any successful equitable contribution action, by
27 definition, will result in a reallocation of the actual net amounts

12

paid by each insurer. Scottsdale does not prohibit this. Instead, it teaches that an insurer seeking equitable contribution from a non-participating insurer "can only recover based on evidence that it paid more than its fair share under the allocation agreements it made with" other participating insurers. 182 Cal. App. 4th at 1037 (emphasis in original). Plaintiffs have met their burden to show that they paid more than their fair share under the "Contribution by Equal Shares" method of allocation and are therefore entitled to an award of $283,334.

Plaintiffs are also entitled to pre-judgment interest. Under California law, plaintiffs are entitled to such interest if the amount recovered is "certain, or capable of being made certain by calculation." Cal. Civ. Code § 3287(a); see also Hartford Accident & Indem. Co. v. Sequoia Ins. Co., 211 Cal. App. 3d 1285, 1305-06 (1989) (applying Cal. Civ. Code § 3287(a) to equitable contribution actions between insurers). Plaintiffs' award was ascertainable on March 7, 2008, the day that the Strachan settlement was funded. Defendant does not propose an alternative date.

Defendant contends that pre-judgment interest is not available because its liability will not be certain until the Court issues its ruling in this action. This argument runs contrary to the cases cited by Defendant and, indeed, would preclude the award of pre-judgment interest in most, if not all, cases. California courts have concluded that pre-judgment interest is appropriate "where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of

13

liability giving rise to damage." Fireman's Fund Ins. Co. v. Allstate Ins. Co., 234 Cal. App. 3d 1154, 1173 (1991). Here, the primary issue is Defendant's liability. Defendant did not contest the amount of Plaintiffs' request or proffer conflicting evidence. Accordingly, Plaintiffs are entitled to pre-judgment interest, calculated at seven percent per annum beginning on March 7, 2008.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment (Docket No. 48) and DENIES Defendant's cross-motion for summary judgment (Docket No. 56). Plaintiffs are awarded $283,334 and pre-judgment interest paid thereon, calculated at seven percent per annum beginning on March 7, 2008. Plaintiffs shall recover their costs from Defendant, and post-judgment interest according to law.

The Clerk shall enter judgment in favor of Plaintiffs in accordance with this Order and then close the file.

IT IS SO ORDERED.

Dated: December 1, 2010

CLAUDIA WILKEN
United States District Judge

14